IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK A. FRITZ,

                Plaintiff,

v.

TONY EVERS, Wisconsin State
Superintendent of Public Instruction,

                Defendant.

OPINION AND ORDER

15-cv-581-wmc

---

For over a year, the Department of Public Instruction's ("DPI") publicly-accessible website listed plaintiff Mark Fritz, an educator licensed in Wisconsin by the Superintendent of Public Instruction, as "under investigation." In this lawsuit, Fritz claims this long-term listing denied him equal protection and due process because: (1) DPI did not actually investigate the underlying allegations against him, and (2) he was neither provided notice nor an opportunity for a hearing to address the allegations. Tony Evers, named defendant in his official capacity as DPI's superintendent, moves to dismiss plaintiff's claims for failure to state cognizable constitutional claims. (Dkt. #6.) For the reasons explained below, the court agrees and will dismiss plaintiff's claims in their entirety.

ALLEGATIONS OF FACT[1]

At all times relevant to this lawsuit, plaintiff Mark Fritz was an educator licensed by the state of Wisconsin. In approximately March of 2012, the Racine Unified School District ("RUSD") submitted a complaint concerning Fritz to the Wisconsin Superintendent of Public Instruction, Tony Evers, as the head of DPI.[2] Shortly after that, DPI posted on its website that Fritz was "under investigation."

Under certain circumstances, Wis. Stat. § 115.31, requires the superintendent to investigate reports concerning licensed educators and publish the name of the individual subject to investigation. More specifically, the statute states in part that:

> Upon receiving a report under sub. (3) relating to a person licensed by the state superintendent, the state superintendent shall investigate to determine whether to initiate revocation proceedings. The state superintendent shall post on the department's Internet site the name of the licensee who is under investigation. During the investigation the state superintendent shall keep confidential all information pertaining to the investigation except the fact that an investigation is being conducted and the date of the revocation hearing.

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all of the factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] Since plaintiff names Evers in his official capacity, the actions of DPI are considered the actions of Evers for purposes of defendant's motion. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Plaintiff acknowledges that Evers is likely not the appropriate, named defendant in this case, but since all of his claims against DPI must be dismissed regardless of the DPI actor most appropriately named, and defendant does not object to proceeding to the merits of the motion, the court will not address this issue further.

Wis. Stat. § 115.31(6)(b). The statute further requires an "administrator," defined as "the chief administrative officer of an educational agency,"[3] §115.31(1)(a), to report a licensed person to the superintendent when:

> 1. The person is charged with a crime under ch. 948 ["Crimes Against Children"], including a crime specified under s. 948.015 ["Other offenses against children"], a felony with a maximum term of imprisonment of at least 5 years or a crime in which the victim was a child.
>
> 2. The person is convicted of a crime described under subd. 1 or of 4th degree sexual assault under s. 940.225(3m).
>
> 3. The person is dismissed, or his or her contract is not renewed, by the employer based in whole or in part on evidence that the person engaged in immoral conduct.[4]
>
> 4. The person resigns and the administrator has a reasonable suspicion that the resignation relates to the person having engaged in immoral conduct.

Wis. Stat. § 115.31(3)(a).

Several different times during the following year, Fritz requested information from DPI about the posted investigation, but his requests were ignored. In or around July of 2013, DPI finally informed Fritz that its investigation would not be completed before the end of that year.

---

[3] Under the statute, "educational agency" includes "a school district, cooperative educational service agency, state correctional institution . . ., juvenile correctional facility . . ., secured residential care center for children and youth . . ., the Wisconsin Center for the Blind and Visually Impaired, the Wisconsin Educational Services Program for the Deaf and Hard of Hearing, the Mendota Mental Health Institute, the Winnebago Mental Health Institute, a state center for the developmentally disabled, a private school, or a private, nonprofit, nonsectarian agency . . . ." Wis. Stat. § 115.31(1)(b).

[4] "'Immoral conduct' means conduct or behavior that is contrary to commonly accepted moral or ethical standards and that endangers the health, safety, welfare or education of any pupil. 'Immoral conduct' includes the intentional use of an education agency's equipment to download, view, solicit, seek, display, or distribute pornographic material." Wis. Stat. § 115.31(1)(c).

3

On August 8, 2013, Fritz asked DPI to schedule a formal hearing on the underlying complaint and posted investigation. Less than three weeks later, on August 27, 2013, DPI responded to Fritz's request by issuing a decision that the complaint lacked probable cause and delisting Fritz as "under investigation" from its website.

The damage, however, had already been done. Between at least March of 2012 through August of 2013, Fritz was denied employment by prospective employers as a result of his being listed as under investigation, and multiple employers informed him of that fact.[5] Fritz asserts that those denials were consistent with the policy, practice or custom of many Wisconsin schools to prohibit the hiring of educators listed as under investigation. According to Fritz, DPI did not actually investigate RUSD's report despite listing him as under investigation. Otherwise, it would have immediately discovered that it was baseless.

OPINION

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted." *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1013 (W.D. Wis. 2008). In "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the nonmoving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in [his] favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The plaintiff need not provide detailed factual

---

[5] Plaintiff does not specifically allege whether the prospective employers were other schools, but that fact is not material to the present motion.

4

allegations, but must provide "enough facts to raise [the claim] above the level of mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")). A plaintiff must provide enough facts to state a claim that is plausible on its face and to allow the "court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Alternatively, the plaintiff can plead himself out of court by alleging facts in the complaint that demonstrate he is not entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). The latter is true here.

I. **Equal Protection**

First, defendant moves for dismissal of plaintiff's "class of one" equal protection claim. A "class-of-one plaintiff must show: (1) that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment." *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014). Here, defendant argues that: (1) plaintiff has failed to plead sufficient facts to claim plausibly that DPI intentionally treated him differently than someone similarly situated; and (2) even if DPI did intentionally treat Fritz differently by listing him as under investigation, he cannot show that there was no conceivable rational basis for that action.[6]

---

[6] In defendant's opening brief, he cites *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), but does not discuss the Supreme Court's holding that class-of-one claims are generally unavailable to public employees unless alleging discrimination for being a member of a protected class. In *Engquist* the court explained "recognition of a class-of-one theory of equal protection in

5

As an initial matter, defendant acknowledges plaintiff need not allege in his complaint that any specific individual was treated differently than he was. *See Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) ("[W]e have repeatedly confirmed that plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints."). As defendant points out, however, plaintiff fails to acknowledge that his failure to identify specific comparators cuts against an inference that his equal protection claim is plausible. The Seventh Circuit addressed the latter point in *Miller*, while discussing two cases in which the plaintiffs were allowed to proceed on class-of-one claims despite not naming comparators in the complaint itself. In *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012), the Seventh Circuit held that the plaintiff could proceed because "[r]eason and common sense provide no answer as to why he was targeted that could be considered a legitimate exercise of police discretion" in light of his allegations of an "extraordinary pattern of baseless tickets." *Id.* at 748. Similarly, in *Swanson v. City of Chetek*, 719 F.3d 780 (7th Cir. 2013), the plaintiff survived summary judgment because the government official's actions "appeared illegitimate on their face and demonstrated overt hostility." *Id.* at 782-85 (internal quotation marks omitted).

Here, in contrast to both *Geinosky* and *Swanson*, the facts affirmatively alleged by plaintiff do not even suggest or imply an illegitimate or even irrational reason for DPI's

---

the public employment context -- that is, a claim that the State treated an employee differently from others for a bad reason, or for no reason at all -- is simply contrary to the concept of at-will employment." *Id.* at 606. Thus, *Engquist* would appear to weigh heavily against, if not foreclose, plaintiff's class-of-one claim here. Because defendant neither raised that argument nor cited later cases applying *Engquist*'s holding to a claim like plaintiff's, the court will instead address the arguments actually raised by defendant.

6

decision to list him as under investigation. Rather, the complaint actually pleads a rational reason for doing so. As defendant identifies, plaintiff alleges in the complaint that RUSD "delivered a complaint to the state superintendent concerning Fritz." (Compl. (dkt. #1) ¶ 11.) Even drawing all reasonable inferences in plaintiff's favor, as the court must do at this stage -- in particular assuming both that the RUSD report was false and that DPI did not actually investigate the report until it found no probable cause over a year later -- DPI's receipt of the report alone provides rational basis for posting the "under investigation" listing. Indeed, as set forth above, § 115.31 mandates that DPI both investigate any report about a licensed educator concerning certain allegations and publicly post the name of the licensee under investigation.

Unlike plaintiff's failure to identify a specific comparator in the complaint, this failure to "negative any reasonably conceivable state of facts that could provide a rational basis for the classification" is fatal to his class-of-one claim. *Scherr v. City of Chi.*, 757 F.3d 593, 598 (7th Cir. 2014) (affirming district court's granting of the defendants' motion to dismiss); *see also Miller*, 784 F.3d at 1121 ("It is not enough for a complaint to suggest an improper motive, for 'a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.'") (quoting *Fares Pawn*, 755 F.3d at 845). "[E]ven at the pleadings stage, all it takes to defeat a class-of-one claim is a *conceivable* rational basis for the difference in treatment." *Miller*, 784 F.3d at 1121 (quotation marks, internal citation and alteration omitted). Accordingly, the allegations in the complaint provide cause for dismissal of plaintiff's class-of-one claim. *See Miller*, 784 F.3d at 1121 ("[I]t is possible

7

for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials.").

II.  **Due Process**

Second, defendant moves to dismiss plaintiff's claim that he was denied procedural due solely process by virtue of DPI listing him as under investigation.[7] "To prevail on a procedural due process claim, 'a plaintiff must establish that a state actor deprived him of a constitutionally protected liberty or property interest without due process of law.'" *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) (quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005)). The analysis of a due process claim requires the court to consider (1) whether the state has interfered with a liberty or property interest and (2) if so, whether the procedures relating to that interference met constitutional standards. *Id.*

The only liberty Fritz appears to claim is encroachment on his ability to pursue employment in his chosen career path as an "educator," although his complaint is somewhat vague in this respect. Nevertheless, for the purposes of defendant's pending motion at least, the court finds that plaintiff has alleged a constitutionally cognizable liberty interest in pursuing a profession as an educator. *Cf. Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) ("The concept of liberty protected by the due process clause has long included occupational liberty -- 'the liberty to follow a trade,

---

[7] Plaintiff's complaint simply claims a violation of "due process of law," but plaintiff has alleged no facts that would shock the conscience to support a substantive due process claim. Regardless, his response to defendant's motion makes clear that he claims a violation of his procedural, not substantive, due process rights.

8

profession, or other calling.'") (quoting *Lawson v. Sheriff of Tippecanoe Cty.*, 725 F.2d 1136, 1138 (7th Cir. 1984)).

Instead, defendant principally contends that plaintiff's due process claim fails as a matter of law because under the facts alleged in the complaint, DPI did not interfere with his claimed liberty interest. More specifically, defendant argues, even crediting his allegations that the "under investigation" listing caused him reputational harm, preventing him from finding alternative employment, there was no change in plaintiff's "legal status" for purposes of asserting a due process claim.

With respect to setting forth what plaintiff must show to prevail on his due process claim, defendant's understanding of the law is more accurate than plaintiff's. By asserting that the Seventh Circuit has held that an individual may make a due process claim where "the employee's good name, reputation, honor or integrity is called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field," plaintiff commits the infraction explicitly discussed in *Hinkle*. (Pl.'s Opp'n Br. (dkt. #12) at 2.) In that case, the Seventh Circuit warned against reading the language quoted above out of context, plaintiff proceeds to do just that, attempting to derive meaning outside of cases "where the state declined to rehire the [plaintiff] or discharged the [plaintiff]." *Hinkle*, 793 F.3d at 768-69. The *Hinkle* court clarified that in a "stigma-plus" case, "to claim a deprivation of liberty, the state must 'distinctly alter' or 'extinguish' a right or status previously recognized by state law." *Id.* at 770. In other words, "[d]efamation alone, even if it renders it 'virtually impossible for the individual to find new employment in his chosen field,' thus is not enough to

9

invoke the procedural safeguards of the Fourteenth Amendment." *Id.* (internal citation omitted).

Defendant argues that plaintiff's due process claim fails on both the "stigma" and "plus" prongs. With respect to stigma, defendant argues that plaintiff's due process claim is distinguishable from earlier Seventh Circuit cases in which the state has disclosed allegations of criminal behavior or specific job-related misconduct, since here DPI only disclosed the fact of an investigation. In support of that argument, defendant cites *Neal v. Fields*, 429 F.3d 1165 (8th Cir. 2005), in which the Eighth Circuit held that a registered nurse had not alleged a "stigma-plus" claim against as employer who informed an inquiring prospective employer that her license was "red flagged" because she was under investigation but gave no details beyond the fact of an investigation itself. *Id.* at 1168. Plaintiff counters by arguing that because Wis. Stat. § 115.31(6)(b) only requires the superintendent to list an individual as under investigation if DPI receives a report concerning a sex offense, a crime against a child or immoral conduct that satisfies the stigma element of his due process claim.

Whether DPI disclosing that plaintiff was under investigation can constitute a stigma to support a stigma-plus claim is a close question. On the one hand, the state's disclosure of only the fact of an investigation would ordinarily appear not to be enough to implicate a due process concern, but on the other hand, that disclosure was made here under a statute that requires publication only when the superintendent receives a report concerning a relatively narrow, serious set of alleged crimes or immoral acts. Thus, Fritz's claim appears to fall somewhere between *Neal* and three arguably analogous cases in

10

which the plaintiff was sufficiently stigmatized by being listed on a central register for publication of risk to children -- *Dupuy v. Samuels*, 397 F.3d 493, 510 (7th Cir. 2005), *Doyle v. Camelot Care Centers., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002), and *Valmonte v. Bane*, 18 F.3d 992, 999-1000 (2d Cir. 1994).

In those cases, unlike here, however, the plaintiffs' listing on the central register took place after they were "indicated," meaning that there had been a determination that some degree of "credible evidence" supported child abuse allegations. *Dupuy*, 397 F.3d at 497; *Doyle*, 305 F.3d at 609-10; *Valmonte*, 18 F.3d at 996. Given that DPI's listing of Fritz as under investigation involved *no* DPI finding as to the credibility of RUSD's report, its publication is arguably materially less stigmatizing to his "good name, reputation, honor, or integrity" than the defamatory disclosures in *Dupuy*, *Doyle* and *Valmonte*. *Dupuy*, 397 F.3d at 510 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)).

Another distinction between Fritz's case and those other three cases, however, is that DPI's publication of an investigation is triggered by a report from a chief administrative officer of an educational agency under specific circumstances, whereas any individual could call a hotline to report child abuse allegations in those cases (although likely at the risk of criminal penalties for false reports). *Dupuy*, 397 F.3d at 496-97; *Doyle*, 305 F.3d at 609; *Valmonte*, 15 F.3d at 995. Thus, it is arguable that DPI's disclosure of the fact of investigation carries some weight regarding the credibility of the

11

underlying allegations, even if not as much as indicated by being placed on the central registry in *Dupuy*, *Doyle* and *Valmonte*.[8]

Precisely where plaintiff's claim falls on the defamatory spectrum between *Neal* and *Dupuy*, *Doyle* and *Valmonte* is not necessary for the court to determine, however, because plaintiff has not sufficiently alleged facts to support the "plus" element of his due process claim. Put differently, plaintiff has failed to show some right or status previously recognized by state law that the state extinguished or distinctly altered. First, plaintiff has alleged no facts that he was fired, suspended or otherwise disciplined by his employer.[9] Second, plaintiff has alleged no facts that DPI suspended his license while under investigation, nor does Wis. Stat. § 115.31 require the superintendent to suspend the license of any individual under investigation.[10] Third and finally, even though plaintiff alleges that he was informed by prospective employers that he would not be considered for hire because the DPI had listed him as under investigation and that "many" Wisconsin schools shared that same policy, practice or custom, those allegations do not rise to the level of liberty interests implicated by "state laws that strongly

---

[8] Perhaps adding some fuel to this argument, DPI's website states that an individual whose status is listed as under investigation means that "[t]he person is under investigation based on information received by the DPI *that warrants an investigation* pursuant to Wis. Stat. 115.31[(6)(b)]." (http://dpi.wi.gov/tepdl/license-lookup/statuses (emphasis added).)

[9] Indeed, plaintiff strongly suggests the opposite, arguing in his response brief that DPI's disclosure, along with "the fact that [he] was looking for a job at the time, created the *false impression* that [he] had been fired by a government employer[.]" (Pl.'s Opp'n Br. (dkt. #12) at 3 (emphasis added).)

[10] DPI's website states expressly that the license of a person listed as under investigation remains valid during the investigation, although the parties have not indicated whether DPI had published this statement on its website while Fritz was listed as under investigation. (http://dpi.wi.gov/tepdl/license-lookup/statuses.)

discourage or effectively prohibit the hiring of an individual recorded in the central register." *E.g.*, *Doyle*, 305 F.3d at 617 (internal quotation marks omitted); *Dupuy*, 397 F.3d at 511.

Accordingly, plaintiff has failed to sufficiently allege a deprivation of any liberty interests protected by the Fourteenth Amendment. Under the facts alleged by plaintiff, DPI erred in listing him as under investigation before actually conducting an investigation, as well as inexplicably delaying in its removal of that status for an excessive period of time despite Fritz's repeated protestations. Yet, even if DPI committed those acts maliciously, plaintiff's due process claim fails as a matter of law because he has not alleged facts that he was deprived of a constitutionally protected liberty interest, and so it must be dismissed.

**III.    Wis. Stat. § 115.31(6)(b)**

Defendant also moves for dismissal of plaintiff's claim that Wis. Stat. § 115.31(6)(b) is unconstitutional. As an initial matter, plaintiff's complaint leaves unclear whether he intends to challenge § 115.31(6)(b) as unconstitutional on its face or as applied, but it is immaterial under which theory plaintiff attacks that provision because his claim fails as a matter of law regardless. The court agrees with defendant that plaintiff has fallen fall short of sufficiently pleading that § 115.31(6)(b) is facially unconstitutional, a claim which would require him to "establish that no set of circumstances exists under which the [legislative act] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiff's only response is that "Wis. Stat. § 115.31(6)(b) is unconstitutional as the state superintendent applied the statute to [him]

because [he] was not provided with any opportunity to clear his name." (Pl.'s Opp'n Br. (dkt. #12) at 3.) Given, however, that plaintiff has failed to sufficiently plead that DPI deprived him of any constitutionally protected interest by listing him as under investigation pursuant to § 115.31(6)(b), and given that plaintiff has provided no reason to doubt that in most circumstances, DPI automatically listing an individual as under investigation even before actually conducting it satisfies the state's valid interest in protecting children, plaintiff's attack on § 115.31(6)(b), whether facial or as applied to him, fails as pled. Accordingly plaintiff's claim that Wis. Stat. § 115.31(6)(b) is unconstitutional will also be dismissed.[11]

ORDER

IT IS ORDERED that:

1) Defendant Tony Evers's motion to dismiss (dkt. #6) is GRANTED.

2) Plaintiff Mark Fritz's claims are dismissed without prejudice.

3) The clerk of court is directed to close this case.

Entered this 6th day of September, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[11] Defendant seeks dismissal of all claims with prejudice, but although plaintiff's claims as currently pled fail as a matter of law, it is not certain that any amendment would be futile.